## WILDES P. WALKER *vs.* CHARLES W. THOMPSON.

*Contract, rescission of. Evidence.*

Where money, which was the consideration of a contract, has come into the pos · session of the party paying it, the other party becomes released from the necessity of making a formal return of it in order to be enabled to rescind such contract as obtained by fraud.

The defendant contended that the plaintiff had obtained his guaranty for the payment of certain notes, by fraudulent misrepresentations as to the maker's solvency. *Held*, that testimony of the maker in relation to business transactions between himself and the plaintiff, tending to show his insolvency and the plaintiff's probable knowledge thereof, was admissible.

ON EXCEPTIONS AND MOTION for a new trial, on the ground that the verdict was against the evidence and the law, and that the jury were influenced by partiality and prejudice against the plaintiff.

This was assumpsit upon an alleged guaranty for the payment of five notes dated New York, February 18, 1869, payable in four, five, six, seven, and eight months, respectively, signed by H. H. Thompson, payable to his order and indorsed by him.

The plaintiff testified that upon the 7th day of June, 1869, the defendant called at his house, and, in consideration of fifty dollars, guaranteed the payment of the notes, which amounted in all to

$5177.91; that afterwards, the defendant, who was owing him $200 for money previously loaned, called at his house and left a check for $250, which was afterwards cashed and the plaintiff used the money; but the plaintiff stated that he did not discover that the check was for $250, till after defendant had left the house.

The defendant denied that he ever received any sum of money for indorsing the notes, but says that upon the seventh or eighth day of June, 1869, while at the plaintiff's house, plaintiff told him he wanted to get the notes discounted at the First National Bank of Bath, and that it was necessary to have three signers; that plaintiff represented to him that the maker was good, whereupon defendant placed his name upon the notes. The defendant also testified that upon the same day he borrowed fifty dollars of the plaintiff, which he afterward paid, with $200 previously borrowed, by a check for $250. The defendant's indorsement was originally in blank, but a guarantee was written over it a few days before proceeding to a trial of the cause.

The defendant called H. H. Thompson who testified, subject to plaintiff's objection, in relation to business transactions with the plaintiff, paying him ¼ of one per cent a day for loans, and other circumstances which tended to show his insolvency and plaintiff's knowledge thereof; and also testified to having told Walker when he gave these notes that he had no means, 'but would try to pay them; and that he several times after that and prior to June 7, 1869, told plaintiff of his (H. H. T.'s) insolvency.

At the trial the defendant contended, that, even if it was shown that he made the alleged guaranty, or that one was implied from his indorsement, he was induced to do so by the fraudulent misrepresentations of the plaintiff, and the presiding judge, in relation to the right of the defendant to set up the defense of fraud, charged as follows: "It is stated by the defendant that whatever money he did receive was paid back. Then if he paid back the money that he received the question of fraud would be open to him."

The jury returned a verdict for the defendant, and the plaintiff excepted to the above ruling and admission of testimony and to the.

admission of other testimony, the facts in relation to which are stated in the opinion.

*Tallman & Larrabee*, for the plaintiff.

*Wm. L. Putnam*, for the defendant, cited upon the question of fraud. Chitty on Contracts, 459; 2 Parsons on Contracts, 8; *Franklin Bank* v. *Cooper*, 36 Maine, 197; *Bryant* v. *Crosby*, 36 Maine, 571; *Franklin Bank* v. *Cooper*, 39 Maine, 551–2; 1 Story's Equity Jurisprudence, §§ 214, 215.

PETERS, J. This is an action upon an alleged guaranty. The defendant indorsed notes to the amount of over $5000, which the plaintiff held against the defendant's brother. The plaintiff maintains that the defendant indorsed them as an act of guaranty, receiving fifty dollars from the plaintiff as a consideration therefor. The defendant denies this, and says that he made the indorsement without any consideration, and as an act of accommodation to enable the plaintiff to get the notes discounted at a bank. He admits, however, that at the time of the indorsement he received the sum of $50 from the plaintiff, but denies that it had anything to do with such indorsing, and claims that it was a sum he then borrowed of the plaintiff, and that it has since been repaid. At the trial the defendant also set up, that, even if it should be shown that he made a guaranty as alleged, he was led into it by the fraud of the plaintiff. It appears that the $50 was afterwards, and before suit brought, returned or repaid to the plaintiff by leaving it upon his office table, and by him retained.

· A question arises whether if the $50 was returned by the defendant as borrowed money, and not for the purpose of rescinding the contract, the defendant would be in a position to set up that he had been defrauded in making a contract of guaranty, if one was made. But a rescission of a contract does not necessarily consist in restoring the consideration that was received as an inducement for making it, although such an act would ordinarily be requisite before a rescission could be made. To rescind is to

treat as a nullity. But if there is no return a waiver of the fraud might be implied. In order to rescind, the defendant must put the parties *in statu quo*, or do all that he can towards it. It is impossible in this case to return the $50 again, as it is already in the plaintiff's possession. The parties are really in the same position as if no contract had been made. That is all the law requires. The defendant disavows the contract, whatever it was, and treats it as a nullity.

A witness for the plaintiff on cross-examination, and without objection, testified that a suit prior to this one was brought against the defendant on these notes in the name of the First National Bank of Bath, for the plaintiff's benefit. The defendant put in the record of the judgment of the case, showing that the plaintiff became nonsuit, to the introduction of which evidence the plaintiff in his brief says an objection was made, though the case does not show it. Though the evidence admitted was of very little consequence, one way or the other, still, if it had a breath of importance, it might be as a single thread in the web of craft and contrivance by which the defendant alleges, and the jury may have found, that he was circumvented.

H. H. Thompson, the maker of the notes, was allowed against the objection of the plaintiff to testify about certain transactions between himself and his business partner on one side and the plaintiff on the other, consisting of notes and renewals and substitutions which resulted in the notes in suit. Nothing could be more clearly admissible. The evidence tended directly and necessarily to show plaintiff's probable knowledge of the insolvency of the maker of the notes which the defendant was induced to indorse. The exceptions cannot be sustained.

Nor can the motion to set aside the verdict as rendered against evidence prevail.

The case was peculiarly one to be settled by a jury. It was a question of the credibility of parties and witnesses. To be sure, there was an inconsistency in the contradictory and duplex character of the defence set up by the defendant. But there were con-

siderations of importance which bore heavily against the testimony of the plaintiff. The inadequacy of consideration would itself be a very controlling fact with a jury, when for $50 the defendant assumed the responsibility of worthless paper, of the amount of over $5000, of the worthlessness of which the defendant knew nothing, while the plaintiff may be presumed to have known much.

*Exceptions and motion overruled.*

APPLETON, C. J.; CUTTING, DICKERSON, DANFORTH, and VIRGIN, JJ., concurred.